CHARLIE THOMPSON, Plaintiff and Respondent, v. YEL-LOWSTONE LIVESTOCK COMMISSION, a corporation, Defendant and Appellant.

No. 9636.

Submitted January 28, 1958. Decided April 11, 1958.
Rehearing denied May 5, 1958.
324. Pac. (2d) 412.

404

Sanders, Cresap & June, Sidney, for appellant.
Paul H. Cresap, Sidney, argued orally for appellant.
Brattin, Habedank & Cumming, Sidney, for respondent.
Otto H. Habedank, Sidney, argued orally for respondent.

HONORABLE T. E. DOWNEY, District Judge, (sitting in place of MR. JUSTICE BOTTOMLY):

This action was brought by plaintiff against defendant to recover for personal injuries alleged to have been sustained by reason of an unruly and fractious cow striking him with hoofs and falling up him while he was on the premises of defendant as an invitee.

The complaint alleges that defendant is a corporation with its principal place of business at Sidney, Montana, there engaged in business as a livestock commission and operating a public livestock market; that on January 6, 1954, and for a long time prior thereto, defendant maintained a building or sales

pavilion in which was contained an auction sales ring for the sale of cattle; that the sales pavilion, in addition to sales ring, contained seats for the use of business invitees and spectators; that defendant, for the proper protection of persons, was at all times required to maintain a barrier or fence between the sales ring and the seats to afford protection to invitees and spectators from animals being driven through the sales ring; that defendant was duty bound to maintain a barrier of sufficient strength and height as to prevent animals which might become frightened or excited from jumping over the fence and upon the patrons of the livestock commission.

That on January 6, 1954, the barrier or fence was not of adequate height and strength to properly restrain animals in said ring, and this fact was known to the defendant; that on January 6, 1954, plaintiff was present as a prospective purchaser at an auction sale of cattle being conducted by defendant; that on said day, one of the cows was in the ring for inspection by bidders and purchasers and while the cow was being driven through the sales ring, it became frightened at the actions of defendant's agents and employees and jumped over the fence or barrier, with the result that the cow came down upon plaintiff, who was sitting at the south side of the ring in a seat provided by defendant, striking the plaintiff with its hoofs and body and upon plaintiff's back and legs, and as a result thereof, plaintiff sustained serious injuries, which required extensive hospitalization and caused, and still causes, plaintiff excruciating pain and suffering; that plaintiff was confined in the hospital as a result of such injuries for a period of 104 days and incurred reasonable and necessary expenses for hospitalization and medicines in the sum of $1,080.35, and other expenses totalling $1,268.35; and that, as a result of the injuries, he expended the sum of $41 for labor in fencing a farm which he owned, and which he was unable to perform by reason of his injuries.

Plaintiff further alleges that prior to his injuries, he was afflicted with chronic arthritis and as a direct and proximate

result of defendant's negligence, and the resulting injury to his leg and back, said arthritic condition was aggravated to the extent that he has been unable to walk without the use of a cane since such injury and has constant pain in his lower back and legs, making it extremely difficult for him to either sit or walk; that by reason of the injuries, he sustained general damages in the sum of $20,000.

Defendant in its answer denied that it was guilty of any negligence and further set up two affirmative defenses, the first being that plaintiff knowing the nature of the business conducted in said premises by defendant, and occupying the seat that he did on said day, assumed the risk from injury of any cattle that might escape from the ring and injure him while he was present in the premises.

As a second affirmative defense, defendant alleged that not knowing the nature, tendency or propensity of the animal, it was not chargeable for the manner in which the cow acted, and that the accident was therefore an unforeseen and fortuitous one. Issue was joined by reply and trial was had by jury.

At the close of plaintiff's evidence, defendant moved for a nonsuit, which was denied, and at the conclusion of all of the evidence, for a directed verdict, which was likewise denied. The trial resulted in a verdict and judgment for plaintiff in the sum of $1,268.35 special damages for hospitalization, X-rays, doctors' services and medical expense, and special damages in the sum of $41 for the cost of labor to repair a fence on plaintiff's farm, and general damages in the sum of $13,000. Defendant's motion for a new trial was denied, and it appeals from the judgment.

Defendant, in this appeal, assigns fifteen specifications of error, but they can be covered mainly by the following:

1. Whether the complaint states a cause of action;

2. Whether the evidence is sufficient to support a verdict and judgment for plaintiff;

3. Whether the trial judge erred in refusing defendant's offered instructions;

4. Whether the trial judge abused his discretion in allowing plaintiff's witness, Chris Olson, to testify in rebuttal; and

5. Whether the verdict is excessive.

The sufficiency of the complaint to constitute a cause of action was attacked by a motion to strike and also by a general demurrer alleging that the complaint did not state facts sufficient to constitute a cause of action.

The language asked to be stricken was contained in paragraph 3 of said complaint as follows:

"* * * and, for the proper protection of said persons, said defendant was at all times required to maintain a barrier or fence affording protection to said business invitees from animals being driven through the sales ring; and that it was the duty and legal obligation of defendant to others, and in particular the plaintiff herein, to maintain such barrier of sufficient strength and height as to prevent animals which had occasion to become frightened, from jumping over the fence and upon the patrons of the livestock commission who, when seated on the terrace seats surrounding the sales ring, would not be afforded reasonable means to escape from any such animal who might have occasion to become frightened, should the same be successful in jumping over the barrier and out of the sales ring hereinbefore described."

The ground stated for the motion to strike being that the same constituted a conclusion of law and is redundant and surplusage.

Were these allegations the only ones in said paragraph, the motion to strike might have some merit, but in the same paragraph, a description of the fence, height of the fence, and the materials from which the fence was built were described, alleging that the fence described therein was not of sufficient height to keep animals therefrom, was a statement of an ulti-

mate fact when considered with the language of the entire paragraph.

The defendant's demurrer upon the ground that the complaint did not state facts sufficient to constitute a cause of action is based largely upon the same grounds as stated in the motion to strike. The allegations of the complaint as set forth herein allege that plaintiff was an invitee upon said premises; that defendant owed him the duty as an invitee to use ordinary care in maintaining the premises in a reasonably safe condition. It further alleges that it failed so to do in not maintaining a sufficient barrier and that plaintiff was injured as the proximate result thereof. Such allegations combine the three elements necessary to constitute a cause of action as to personal injury, to-wit:

1. The existence of a legal duty on part of defendant to plaintiff;

2. A failure to perform the duty; and

3. Injury or damages proximately resulting to plaintiff from such failure.

In fact, the complaint further alleges the defendant knew that the barrier was not of sufficient height, in addition to the other facts alleged.

In the case of Ritchie v. Northern Pac. Ry. Co., 128 Mont. 218, 272 Pac. (2d) 728, 729, wherein the demurrer was sustained to the complaint, this court in testing the sufficiency of the complaint, found the following allegations were sufficient:

"(1) Facts sufficient to show that defendant owed plaintiff the duty of furnishing him a reasonably safe place to work; (2) a breach of that duty by 'failing to exercise ordinary care to provide this plaintiff with a reasonably safe place to work * * * (3) as the direct and proximate result * * * thereof' plaintiff fell and was seriously, totally, and permanent injured."

The complaint in this action sets forth facts fully describing the sales ring and seats for customers and spectators and the necessity for a barrier between them, and that it was defend-

ant's duty to provide such a barrier as would prevent animals from escaping from the ring into the crowd.

The complaint further alleged the barrier was not of sufficient height and strength to so restrain animals, which fact was known to the defendant, and that as a direct and proximate result of defendant's negligence in failing to maintain a sufficient fence or barrier, the cow jumped over the fence, striking and falling upon plaintiff and causing his injuries.

The allegations of the complaint very clearly and distinctly place the plaintiff on the premises of defendant as an invitee and cast upon the owner the duty of exercising reasonable care to maintain the premises in a reasonably safe condition.

The trial court correctly denied defendant's motion to strike and properly overruled defendant's demurrer.

The plaintiff, in support of the allegations of his complaint, testified that he attended the sale being conducted on January 6, by the defendant in its premises at Sidney; that his intention in being present was to purchase cattle; that he was seated close to the ring in the stands or bleachers erected around the ring for the convenience and comfort of spectators and buyers; that he was seated at the south side of the ring near the buyers' stand; that shortly after the sale commenced, an ordinary appearing cow was driven or put in the ring by defendant's employee for the purpose of display and inspection for the buyers; that the cow appeared to be gentle, but it suddenly dashed across the ring and jumped or climbed over the fence and fell upon him; that he was knocked down and a short time thereafter, rendered unconscious, suffering from pain in the legs; that he was removed from the premises in an ambulance and taken to a hospital in Sidney; that he was suffering severe and excruciating pain in the back and some pain in the right leg; that shortly thereafter, Dr. Pennepacker came into the room where he was lying upon the table and gave him some medication and when he woke up, he was in bed in the hospital; that he was confined to the hospital for a period of 104 days; that

410

the two bones in his lower right leg, about two inches below the knee, were broken; that the leg was placed in a cast and the cast had not been removed when he was discharged from the hospital; that at the time he was released from the hospital, it was necessary for him to use crutches for approximately two months after his discharge, and that since such time, it has been necessary for him to use a cane.

Plaintiff further testified that within a couple of weeks after being placed in bed in the hospital, a rash broke out over his entire body and that the same was very itchy and irritating.

Plaintiff further testified that he had an arthritic condition for thirty years prior to the accident, which condition had made his left leg practically useless; that since the accident the pain in his back and down his left leg is much more severe than it was prior thereto; that at the present time, he can straighten his right leg and place it forward, but is unable to bend it backwards; that at the time of the trial, the rash was still present upon his body, especially on his lower back and his legs; that Dr. Pennepacker is still treating him and that since his discharge from the hospital he has consulted and been treated by other doctors.

Several other witnesses testified substantiating the testimony of plaintiff as to the manner in which his injuries were received. The plaintiff called Chris Hansen, the vice-president of defendant corporation, who, with Ingvard Svaare, president of the defendant corporation, were conducting and supervising the sales for the defendant, and had been so doing since the defendant corporation started business in 1943. Mr. Hansen testified that the premises, wherein the sales were conducted, consisted of a ring, semicircular in shape; that said ring was constructed at the bottom by boards to a height of about three feet; that posts were attached to said board or planks and above said boards, and extending around said ring, were four cables, six to eight inches apart; that said fence or barrier was built for the purpose of keeping the cattle which were placed on sale

within the ring and to keep them from getting into the seats placed outside the ring; that the stands or bleachers were built around the ring and were also semicircular in shape.

Hansen also testified that about four weeks previous to the date on which plaintiff was injured, another animal (a steer) jumped over the fence, but its hind foot was entangled in the cables and said foot had to be extricated from the cables to release the animal, but the steer did not get sufficiently over the fence to come into contact with persons seated in the stands or bleachers.

Dr. Pennepacker testified that on the date of the injury, he saw the plaintiff in the hospital and at that time, upon examination, discovered that plaintiff's back was very red and discolored and plaintiff complained of severe pain in the back; that the two bones in plaintiff's lower right leg, the tibia and fibula, were broken about two inches below the knee; that he has treated plaintiff ever since; that shortly after plaintiff was admitted to the hospital, he developed a rash which was very itchy and irritating and which, in his opinion, was caused from a chronic nervous strain brought on by the injuries to the back and leg; that in the right leg, the bones have healed and knitted and there is some stiffness in the knee caused from the injury. That plaintiff has an arthritic condition which was greatly aggravated and worsened by the injuries to the back and knee, and that plaintiff has constantly, from the time of said injury, complained of pains in the back.

That the rash has cleared from a large portion of the body, but some still remains upon the lower back and legs and he is unable to say just when this condition will clear up. The doctor further testified that the plaintiff has paid the sum of $1,268.35 for hospitalization, X-rays and doctor's services, and that the same was a reasonable charge therefor.

At the close of plaintiff's case, defendant made a motion for a nonsuit, which was by the court overruled and defendant assigns the refusal to grant a nonsuit as error.

In the case of Porter v. Thompson, 74 Cal. App. (2d) 474, 477, 169 Pac. (2d) 40, a case wherein the facts were substantially the same as the facts in this case, that court sustained the trial judge in granting a new trial from a verdict rendered in favor of defendants.

The facts, in the Porter case which was a suit for damages for personal injuries received by the plaintiff who sustained a broken leg and ankle as the result of a fractious cow jumping the fence of an enclosure adjacent to which plaintiff sat upon a bleacher, are similar to those herein. Plaintiff was present as a prospective purchaser at an auction sale conducted by the defendants. The enclosure and seats were maintained by the defendants, and plaintiff was an invitee at that sale. The defendants were charged with negligence in failing to provide a reasonably safe enclosure and adequate supervision for the protection of the customers. A new trial was granted on the grounds, among others, of the insufficiency of the evidence to support the verdict and judgment.

For several years the defendants owned and operated an auction sale business near Modesto for the purpose of selling cattle. For that purpose, they maintained a corral near a building within which they constructed an enclosure fifteen by thirty feet in size for exhibition of cattle for sale. It was built with heavy posts, firmly set in the ground seven and one-half feet apart. On the inside of the posts base timbers were nailed, above which were two twelve-inch planks. These timbers extended upward from the ground about thirty inches, and above the planks, three half-inch wire cables extended about six inches apart through auger holes bored in the upright posts. The upper cable was placed only four feet eight inches from the ground and it sagged several inches between posts. There were two gates opening into the separate lanes, one used for the cattle to enter and the other for their exit. Close to the inner enclosure there was constructed on two sides thereof, three rows of seats for the use of customers. The seats were

built on ascending elevation from front to rear like bleachers. On June 7, 1943, the plaintiff and her husband left a bull with the defendants for sale. Later that day, the plaintiff entered the defendants' building and sat adjacent to the enclosure on the second row of seats as a prospective purchaser of a cow. Two or three attendants and the defendant, Clint Thompson, were present. A cow was brought into the enclosure for inspection and sale and the gates were closed. The cow was nervous and became frightened. It ran frantically about the enclosure, approaching on the "dead run" the side on which plaintiff sat, "jumped over" the upper cable, landing upon her and violently striking and pawing her, as a result of which she sustained a broken leg and ankle, dislocated foot, numerous bruises and other serious injuries. The board upon which plaintiff sat was broken and she was hurled to the ground.

When the cow went on a rampage, instead of opening the gate for it to escape, or attempting to otherwise protect the spectators, the attendants "got out of there as quick as possible." The defendant, Clint Thompson, admitted that he was present on an occasion about a year and a half before this incident, and saw another cow escape from the enclosure by going over or through the fence "between the cables."

At the conclusion of the trial, the jury returned a verdict in favor of the defendants, finding that they were "not guilty of negligence." A judgment was rendered accordingly. A motion for new trial was granted on the specified ground of insufficiency of the evidence to support the verdict. From that order, an appeal was taken. The appellate court said [74 Cal. App. (2d) 474, 169 Pac. (2d) 42]:

"The chief contention of the appellants is that the court abused its discretion in granting a new trial since the uncontradicted evidence clearly shows that they were not guilty of negligence, and that they had no knowledge of the fact that the cow in question was nervous or dangerous to the spectators.

"In determining whether the defendants were guilty of negli-

gence which proximately caused the injuries complained of; it was the duty of the jurors, and the trial judge upon the motion for new trial, to consider all of the proved facts and circumstances surrounding the incident. The question to be determined is, what would a reasonably prudent person be required to do, under such circumstances, for the protection of his invited customers. The fact that the defendants did not actually know that the particular cow in question was fractious, nervous or dangerous does not necessarily acquit them of negligence on that score. They were expert auctioneers of cattle, who had been in that business for several years. They had handled and sold hundreds of cows. We must assume that some of the animals were likely to become fractious, irritable, nervous and dangerous. The defendants handled and sold cattle which we assume had various temperaments, tendencies and natures. On a former occasion another fractious cow broke through the enclosure. It is not unreasonable to assume that the defendants should have anticipated that some of the cows would become uncontrollable and resort to dangerous behavior when driven into the small enclosure in the presence of spectators. Since it was the duty of the defendants to provide a reasonably safe enclosure, it is a proper inquiry as to whether a fence 4 feet 8 inches high, with a sagging upper cable, is reasonably safe for the protection of prospective customers who are seated adjacent thereto. The court might reasonably infer that the enclosure was unsafe, and that defendants should have added another cable to increase the height of the fence, or at least that they should have tightened the sagging top cable. The court also had a right to assume it was the duty of the defendants to provide attendants to reasonably guard the cattle in the enclosure, and that, instead of fleeing for their own safety when the cow went upon a rampage, they should have opened the gate to permit the animal to escape, or otherwise restrain it for the protection of the spectators.

"These and other questions were proper for the judge to

consider on the motion for new trial. Certainly this court may not hold as a matter of law that the judge abused his discretion in granting a new trial merely because he disagreed with the jury regarding the defendants' exercise of ordinary care where there is a serious conflict of evidence upon that subject, as there was in this case.

"The plaintiff, Marie Porter, was an invitee. She was a prospective purchaser of cattle at the auction sale which was being conducted by the defendants. It was defendants' duty to exercise reasonable care to maintain supervision and a reasonably safe enclosure and seats for the customers. Locke v. Red River Lumber Co., 65 Cal. App. (2d) 322, 150 Pac. (2d) 506. An invitee, as distinguished from a mere licensee, is one who enters the premises where the injury occurs for the purpose of mutual interest to himself and the owner or occupant of the property * * *

"We conclude that the court did not abuse its discretion in granting the motion for new trial. The order is affirmed."

The California court later approved this rule in Baley v. J. F. Hink & Son, 133 Cal. App. (2d) 102, 283 Pac. (2d) 349. See also Robinson v. F. W. Woolworth Co., 80 Mont. 431, 261 Pac. 253; Baatz v. Noble, 105 Mont. 59, 69 Pac. (2d) 579; Ahlquist v. Mulvaney Realty Co., 116 Mont. 6, 152 Pac. (2d) 137.

It is a general rule that in a motion for nonsuit, the evidence must be accepted and taken most favorably to plaintiff, and that even doubtful inferences and deductions must be resolved favorably toward plaintiff. The evidence in this case as introduced by plaintiff, clearly established that he was present as a business invitee and that it was defendant's duty to use ordinary care to keep the premises in a reasonably safe condition. This fact having been very strongly established, the judge properly overruled and denied defendant's motion for a nonsuit.

The defendant's evidence in the main was substantially, with

reference to the construction of the building and the manner in which the accident happened, the same as that given by plaintiff and his witnesses. As a defense, defendant's witnesses testified they knew nothing of the nature or temperament of this particular cow, they having not been advised that it was either wild or liable to become fractious, and that their servants and agents did nothing to frighten or excite the cow to cause it to act in the manner in which it did. Evidence was also offered in defendant's behalf that during the time they were in business conducting these auction sales of animals, more than 400,000 head of cattle had passed through the ring and many thousand head of horses in addition thereto had also been sold by them on these premises. Some of their witnesses expressed the view that in their opinion the fence or barrier was of sufficient height for the business conducted by defendants. No measurement was apparently taken of the height of the barrier, and the testimony of the witnesses varied between five and six feet.

On cross-examination of their witnesses, Chris Hansen and Ingvard Svaare, it was shown that they knew of the incident of the cow or steer going over the fence four weeks prior to January 6, 1954, and it was their testimony that after that incident, the barrier was not strengthened or changed in any manner except that they had tightened the top cable of the fence. It was also brought out on cross-examination of Mr. Svaare, the president of the defendant corporation, and one of the supervisors of said sales, that he was present when the steer went over the fence and that he could foresee that it could happen again, by the following questions and answers:

"Q. After this first animal jumped out of that ring, Mr. Svaare, didn't you foresee some other animal might be able to jump out just as this one did? A. Well, some of us have been raised on a farm and around livestock, I have been around livestock all my life, we know something might happen, but you don't especially get scared when you see it happen. You feel

it is something that won't happen again maybe in ten years and it might happen in a very few months again.

"Q. You did foresee that it could happen again as long as it happened once? A. Yes."

None of the defendant's witnesses testified that plaintiff was not injured in the manner testified to by him or that he was not present as a business invitee or that he did not suffer the injuries he claimed, or that his present physical condition was other than testified to by him and Dr. Pennepacker.

There was no evidence nor is there any evidence offered or introduced that plaintiff was present other than as an invitee and none whatever that he assumed the risk of injury to him by cattle in being seated where he was on the day of the injury. There was no medical testimony whatsoever introduced by defendant as to the nature, extent or permanency of plaintiff's injuries and Dr. Pennepacker's evidence in this regard stands wholly uncontradicted.

It is also noted that no authority is cited by defendant in support of its defense of assumption of risk. The defendant, after the close of the testimony, made a motion for a directed verdict, which the trial court promptly denied. From what has been said herein, it is our opinion the court ruled correctly in denying defendant's motion for a directed verdict and in submitting the question of negligence to the jury for its consideration.

At the conclusion of defendant's testimony, plaintiff's counsel, in the absence of the jury, requested leave of court to call Chris Olson as a witness in rebuttal. The rule of exclusion of witnesses having been invoked, the witness Chris Olson, having been present in court throughout the trial, counsel informed the court of these facts and stated to the court he had just been informed that the witness Olson had evidence that three other animals in addition to those testified to by the witnesses, had escaped from the ring. Defendant's counsel vigorously objected to this proposal but the court allowed the witness Olson to tes-

tify. His testimony in effect was that, on three previous occasions other than the two testified to by other witnesses, he had been present in the premises of defendant when sales were being conducted, and had seen three animals escape from the ring and that on one of these occasions, the vice president of the defendant corporation, Chris Hansen, was present. The occasions, upon examination of the witness, disclosed that the escape of cattle from the ring that he was testifying to had occurred many years previous to this accident. Defendant then called Chris Hansen in surrebuttal, who denied that he was ever present on any of the occasions testified to by the witness Olson.

Defendant's counsel (in chambers) then stated to the court that he had an offer of proof that one Nick Hansen, who was seriously ill in a hospital in Billings, Montana, would testify that in the year 1953 he was seated as a buyer of the west end of the sales ring when a cow or steer jumped up on the fence, got part way over, struck the witness Nick Hansen, and then fell back into the sales ring.

Counsel for plaintiff thereupon stipulated that if Nick Hansen was present that he would so testify, and offered to have such testimony go into the record as the testimony of Mr. Hansen, as if he were personally present and able to testify. Whereupon, counsel for defendant moved to strike the offer of proof made by the defendant's counsel. There is no reason given for this action by defendant.

The defendant in its brief devotes much time to allowing the witness, Chris Olson, to testify, but also elaborates very fully upon the fact that witness Olson's testimony was very hazy, uncertain and of very little weight. We feel the court committed no error in allowing such witness to testify. He had not been subpoenaed, and therefore, could not have been guilty of a contempt of court in not leaving the courtroom. The statement of plaintiff's counsel that he had no knowledge of this evidence given by Mr. Olson, and that he had not been informed there-

of until shortly prior to asking permission of the court to call Olson as a witness, is uncontradicted.

The matter of granting a motion to have witnesses excluded ■ from the courtroom during the trial of a case is wholly in the discretion of the court. The court having made such an order may at any time during the trial, for good cause shown, revoke or annul said order, and certainly where, as here, a person is in court without knowledge that he is to be called as a witness, he is violating no order or rule of court in being so present. If, during the course of the trial, certain testimony is introduced which he thinks or knows is contrary to facts within his knowledge, and he feels that he should divulge this knowledge to one of the parties, he commits no wrong. When these facts are made known to the court, it is then within the court's discretion to allow or refuse said witness to testify.

We feel it would be unfair under the circumstances, such as ■ these, to deprive the plaintiff of the testimony of such a witness. Certainly plaintiff should not be penalized by not being allowed the benefit of such testimony when neither he nor his counsel were at fault. We feel that the court in exercising its discretion in allowing the witness to testify committed no error. State v. McDonald, 51 Mont. 1, 149 Pac. 279.

Defendant assigns as error the refusal of the court to give its ■ tendered instruction No. 17. This instruction was a definition of a legal fence as contained in section 46-1401, R. C. M. 1947. Without setting forth this instruction, which was lengthy, we are of the opinion it was wholly inapplicable to the facts in this case and would be neither enlightening nor instructive to the jury and certainly would serve as no guide as to the exercise or use of reasonable or ordinary care in maintaining the barrier or the height of the barrier as applied to the facts in this particular case. Such an instruction would not be helpful, but on the contrary only tend to confuse and bewilder the jury. The instruction was properly refused.

Defendant also specified as error the court's refusal to give

 defendant's offered instruction No. 18, which was as follows:

"You are instructed that before plaintiff can recover in this action, he must show that the defendant knew, or in the exercise of ordinary care, should have known, that the cow in question had a propensity or tendency to do an act which might endanger the safety of patrons behind the sales ring barrier."

In Porter v. Thompson, supra, 74 Cal. App. (2d) at page 477, 169 Pac. (2d) at page 42, the court, with reference to this particular question, stated: "The fact that the defendants did not actually know that the particular cow in question was fractious, nervous or dangerous does not necessarily acquit them of negligence on that score. They were expert auctioneers of cattle, who had been in that business for several years. They had handled and sold hundreds of cows. We must assume that some of the animals *were likely* to become fractious, irritable, nervous and dangerous. The defendant handled and sold cattle which we assume had various temperaments, tendencies and natures. On a former occasion another fractious cow broke through the enclosure. It is not unreasonable to assume that the defendant should have anticipated that some of the cows would become uncontrollable and resort to dangerous behavior when driven into the small enclosure in the presence of spectators." Emphasis supplied.

The court in the above-entitled action recognized and declared that because defendants in selling hundreds of cattle in their business were and should have been experts, they should have known that cattle have various temperaments, natures and dispositions.

In the present case, the testimony of defendant is that it had handled and sold hundreds of thousands of cattle in its business, and also thousands of horses on its premises, and certainly judged by the standards set forth in the Porter case, supra, should have been expert in this line. It has been further held that the fact that defendant, in the sale of cattle at auctions

such as held here, is not free of liability because of ignorance of the traits of a particular animal.

The testimony of Mr. Svaare in this case goes to the extent that defendant would offer for sale any animal delivered to them for that purpose. The refusal of this instruction was not error.

Defendant also assigns as error the court's refusal to give its offered instruction No. 27 reading as follows:

"You are instructed that the fact it may have been within the power of defendant to have built its fence high enough to protect any cow from climbing out does not mean that the defendant was negligent in failing to do so." It is apparent that the ruling of the court may be upheld for the reasons that the instruction is nothing more or less than an abstract statement of law, is argumentative, to say the least, defines no duty owed or owing by either party, and could serve no useful purpose whatever.

Defendant attacks the verdict upon the ground that the same is excessive and given under the influence of passion and prejudice. The special verdict rendered in this case was wholly substantiated by evidence. In fact testimony as to the items included therein was received without objection, nor was any objection offered to the instruction as to the amount of special damages.

In Sullivan v. City of Butte, 87 Mont. 98, 100, 285 Pac. 184, 185, this court stated:

"In this character of action the amount of damages committed, in the first instance, to the sound discretion of the jury, and next to the discretion of the judge of the trial court, who, in passing upon the motion for a new trial, may consider the evidence anew, determine anew the facts, and set aside the verdict, if in his judgment it is not just. It is only when 'excessive damages, appear to have been given under the influence of passion and projudice' (sec. 9397, subd. 5, Rev. Codes 1921 [now R. C. M. 1947, sec. 93-5603]) that a new trial may be

granted for that reason. Manifestly, in personal injury actions, there is no measuring stick by which to determine the amount of damages to be awarded, other than the intelligence of a fair and impartial jury governed by a sense of justice; each case must of necessity depend upon its own peculiar facts. The rule was succinctly stated by Mr. Justice Holloway, speaking for the court in Kelley v. John R. Daily Co., 56 Mont. 63, 181 Pac. 326, 332, in the following language: 'In passing we may observe that the fact that a verdict appears to be excessive is not a ground for a motion for a new trial. It is only when the excessive damages appear to have been given under the influence of passion or prejudice that a new trial may be granted for that reason. * * * There is no standard fixed by law for measuring the value of human health or happiness. In every case of personal injury a wide latitude is allowed for the exercise of the judgment of the jury, and, unless it appears that the amount awarded is so grossly out of all proportion to the injury received as to shock the conscience, this court cannot substitute its judgment for that of the jury.' To the same effect are: Jones v. Shannon, 55 Mont. 225, 175 Pac. 882; Burns v. Eminger, 84 Mont. 397, 276 Pac. 437.''

In Baatz v. Noble, supra, 105 Mont. 59, at page 70, 69 Pac. (2d) 579, at page 583, this court held:

''With reference to the contention that the verdict was excessive, we said in the case of Coolidge v. Meagher, 100 Mont. 172, 46 Pac. (2d) 684, 686: 'There is no legal yardstick by which compensation for pain and suffering or bodily injuries may be measured (McNair v. Berger, 92 Mont. 441, 15 Pac. (2d) 834); the matter lies peculiarly within the province of the jury and award must of necessity depend upon the peculiar facts of the individual case. [citing cases, including Sullivan v. City of Butte, 87 Mont. 98, 285 Pac. 184.] ''So long as we have a system which confides to juries the duty to determine the issues involved in this character of cases and to fix the amount of compensation to be paid, unless the result of their delibera-

tion is such as to shock the conscience and understanding, it must be accepted as conclusive.'' Autio v. Miller, 92 Mont. 150, 11 Pac. (2d) 1039, 1045; Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 37 Pac. (2d) 1025.' While the award here was generous, it was not such, on the record, as to shock the conscience of the court and will not be disturbed on appeal.'' See Staff v. Montana Petroleum Co., 88 Mont. 145, 291 Pac. 1042; Batchoff v. Craney, 119 Mont. 157, 172 Pac. (2d) 308; Pfau v. Stokke, 110 Mont. 471, 103 Pac. (2d) 673.

We feel that all the facts of this case disclose plaintiff was seriously injured, suffered excruciating pain and anguish, and that as a result thereof has been left practically helpless; that he is still suffering pain, is still afflicted with a nervous condition and that these injuries are permanent.

The learned trial judge was in a position, upon the motion for a new trial, to have reduced the verdict had he in the exercise of sound discretion felt that the damages were excessive. Instead he refused to do so and permitted the verdict to stand, and we are not in a position from all of the facts in this case, to intelligently alter or change the judgment of the court and jury. Especially this is so where defendant in its brief refers to authorities which generally considered that the sum of $10,000 would not have been excessive.

For the reasons herein stated, the judgment is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES CASTLES AND ADAIR, concur.