401 P.2d 946

**Frank Bill TOM, Plaintiff and Respondent,**

**v.**

**DAYS OF '47, INC., Defendant**

**and Appellant.**

No. 10241.

Supreme Court of Utah.

May 18, 1965.

Christensen & Jensen, Salt Lake City, for appellant.

Gayle Dean Hunt, Dwight L. King, Salt Lake City, for respondent.

WADE, Justice:

Days of '47, Inc., defendant below and appellant herein, appeals from a special verdict by a jury and judgment in conformance therewith in favor of Frank Bill Tom, plaintiff below and respondent herein, for injuries sustained while watching a rodeo sponsored by appellant at the Utah State Fair Grounds. We shall hereafter refer to respondent, Frank Bill Tom, as plaintiff, and appellant Days of '47, Inc., as defendant.

From the record it appears that plaintiff had gone to the Utah State Fair Grounds, accompanied by his wife and children, with the idea of participating for prizes in the rodeo as a bronco rider that evening. However, the show having already started, he was told he could not participate, but that he and his family were welcome to watch the show without charge if they wished. Plaintiff and two teen-age sons took seats

in the top row of the bleacher section, and his wife and younger children took seats two or three rows below them. The top row had no backs or rails. They were watching the show when a Brahma bull charged the fence encircling the arena and broke into the area where the bleacher section was located. Shortly thereafter plaintiff was found unconscious on the ground in back of the bleachers, having apparently fallen or been pushed from his seat, striking his head on concrete as he landed. Upon admittance to the hospital, he was discovered to have suffered a severe skull fracture and a brain injury. There was no direct evidence as to how plaintiff fell. Plaintiff's story was that he tried to grab a rope attached to the bull in order to protect his family and as a result was thrown from the bleachers. There was medical testimony that the type of injury plaintiff received could result in a complete loss of memory as to the happening and could cause hallucinations in which a person could believe that he remembers things which never really occurred.[1] There was testimony that the spectators in the bleachers jumped, pushed, shouted and stumbled over each other when the bull charged the fence and broke into the spectators' section.

There was testimony by plaintiff's expert that the fence encircling the arena was inadequate because old, brittle cast-iron eye tops were used to fasten the top rails to the posts, and because the fence, which was of chain link type which is flexible, did not have any tension wire at the bottom to keep it tight. Since chain links are flexible, if too flexible when hit, the wire would give at point of impact, and whatever hit it could go underneath the fence or between the top rail and the wire if the fence was not adequately fastened to the top rail. There was also testimony that the chain link was on the spectator side of the posts rather than on the arena side, and had the chain link fence been on the arena side of the posts, the wire would stretch but would not have given as easily when hit because it couldn't "pop the ties." Further there was testimony that it is customary to have a rail eye-high for an animal in livestock fences to divert it from the fence when it is running in that direction. No such rail was in place the night of the accident. Defendant's evidence was to the effect that the fence was adequate for the purposes for which it was used, and was as good or better than fences used in other places to separate the arena from spectators viewing rodeos.

In answering questions submitted to it by the court on a special verdict, the jury found that the plaintiff fell from the bleachers because of the charge of the bull and the resultant movement of the crowd; that the defendant was negligent in the manner in which the fence was constructed,

1. Ewan v. Buttars, 16 Utah 2d 272, 399 P.2d 210.

and that this negligence was the proximate cause of the injuries received by plaintiff.

Defendant contends (1) there is no evidence to support the jury's finding that the surge of the crowd caused plaintiff's fall; (2) that the court's instructions were weighted in favor of plaintiff, unduly emphasizing his theory of the case, and in fact, amounting to a directed verdict in plaintiff's favor on the issue of negligence; (3) that the court erred in withdrawing the issue of whether plaintiff was a business guest or bare licensee; (4) that the court erred in refusing to strike certain medical testimony; and (5) that the award of damages is excessive. We find no prejudicial error in any of these contentions.

Defendant contends there is no evidence to support the jury's finding that the movement of the crowd caused plaintiff's fall because the only direct testimony concerning the fall came from plaintiff himself, who thought that he fell in an attempt to restrain the bull from proceeding further so that his family would be able to escape. However, such a belief on the part of plaintiff, even though not based on fact, was explained by medical testimony anent hallucinations resulting from the type of injury suffered by plaintiff. Although there was no direct evidence as to what caused plaintiff to fall, there was evidence that when the bull charged, the crowd stampeded; that plaintiff was not drunk at the time;

that he was seated on the top row of the bleachers; that the top row of the bleachers had no back support, and that plaintiff was found lying unconscious on the ground, his head evidently having struck concrete. The circumstances outlined above were sufficient from which the jury could reasonably conclude and find that the plaintiff's fall was caused by the surge of the frightened crowd as it tried to escape when the bull charged the fence.

Defendant contends that the court committed prejudicial error because it unduly emphasized plaintiff's theory and practically directed a verdict on the issue of negligence because it instructed the jury that defendant had a duty to construct a fence that would be safe for the purpose for which it was intended, that is, to keep the bull out of the bleachers, and that it had a further duty to use reasonable diligence to inspect the fence to see that it was in proper condition to fulfill this requirement, and that if it failed in either of these duties the defendant would be negligent. Then, after giving this instruction the court unduly emphasized plaintiff's evidence by further instructing the jury that it must find whether defendant was negligent in building the fence with the chain link wire on the grandstand side of the posts, using the type of fastening it did and in failing to have a rail or tension wire or other obstruction between the ground and the bottom of the fence.

It is to be noted that the uncontradicted evidence was to the effect that the Brahma bull was trained to be belligerent and in its performance at the rodeo was goaded to be mean. For show purposes, the meaner the bull is, the more spectacular it is considered to be for the audience. It is also to be noted that there was no question as to how the fence was built or the type of materials used in the fence. The only controversy in regard to the fence was its adequacy for the purpose for which it was built, that is, to keep the performing animals in the arena and away from spectators. Both plaintiff and defendant presented the views of experts on this problem. Plaintiff's experts pointed out what they considered its deficiencies and defendant's experts testified that as built, the fence was as good or better for the purpose intended than usually is found in other places where rodeos are held. The jury found the opinions of plaintiff's experts more convincing.

It cannot be gainsaid that to be free of negligence a higher degree of care is required of a possessor for the containment of a known vicious or dangerous animal than in the case of an ordinary, domestic animal with less known dangerous propensities. It is readily foreseeable that a vicious animal is highly dangerous to persons with whom it might come in contact, and, therefore, the possessor must use greater care to forestall such contact. The court's instructions were consonant with this greater duty of care but left it to the jury to determine whether defendant had used such care in the construction and inspection of the fence so that it was safe for the use for which it was intended. The gist of an action for injuries against the possessor of a dangerous animal is the failure to use care commensurate with its known vicious tendencies to keep the animal securely contained.[2] The failure to use such care is negligence, and if such negligence is the proximate cause of the injuries sustained by the plaintiff, the possessor of the animal is liable. The fact that plaintiff did not pay for viewing the performance and may have been a mere licensee did not change defendant's liability. Unlike the rules in cases imposed on possessors of land for injuries caused by the dangerous physical conditions of the lands, no distinction between business invitees and licensees are made as to liability of the possessor of a dangerous domestic animal for injuries sustained by either.[3]

An examination of the record discloses that there was sufficient competent evidence from which a jury could find that

2. 4 Am.Jur., 2d Animals, Sec. 86, p. 334; A.L.I. Torts, Sec. 509, comment (e); Mungo v. Bennett, 238 S.C. 79, 119 S. E.2d 522, 85 A.L.R.2d 1155 and annotations.

3. A.L.I. Torts, Sec. 513.

among the injuries received by the plaintiff was a substantial impairment of hearing which could be normally expected to occur in the type of skull fracture received by plaintiff in his fall, a fall "which had broken the bone and torn the tissue all the way down into the middle ear and let the blood and spinal fluid leak out through the fracture," and for which fracture plaintiff was hospitalized for over two weeks. In view of the evidence from other sources that plaintiff appeared not to hear as well after the accident as he did prior thereto, the court did not commit prejudicial error, if it committed error at all, by refusing to strike the testimony of one of plaintiff's medical witnesses who had not attended him at the time of the accident to the effect that the type of skull fracture sustained by plaintiff ordinarily results in some hearing loss, although there could be other reasons for hearing loss.

In view of the extent and severity of plaintiff's injuries this court is not impressed with the argument that the award by the jury of $18,000 general damages is excessive.

Affirmed. Costs to respondent.

McDONOUGH, CROCKETT and CALLISTER, JJ., concur.

HENRIOD, C. J., concurs in the result.