No. 12554

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

KEITH W. ROSS individually and KEITH W.
ROSS as administrator of the Estate of
Jeffery Wade Ross, a deceased minor child
and representative and successor in interest
of Jeffrey Wade Ross, a deceased minor child,
and Connie J. Ross,

                    Plaintiff and Appellant,

-vs-

GOLDEN STATE RODEO COMPANY, a Corporation,

                    Defendant and Respondent.

---

Appeal from:  District Court of the First Judicial District,
             Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

    For Appellant:

        Graybill, Graybill, Ostrem and Warner, Great Falls,
          Montana
        Harrison, Loendorf and Poston, Helena, Montana
        Jerome T. Loendorf argued, Helena, Montana

    For Respondent:

        Risken and O'Leary, Helena, Montana
        Jack Risken argued, Helena, Montana

---

                    Submitted:  June 17, 1974

                      Decided: NOV 2 8 1974

Filed: NOV 2 8 1974

_Thomas J. Kearney_
                          Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment for defendants entered on a jury verdict. Plaintiff appeals following denial of motions for judgment notwithstanding the verdict and new trial. The case was tried in Lewis and Clark County, Hon. Gordon Bennett presiding.

Because the issues on appeal are rather narrowly stated, to understand our holding here it is important to discuss some of the preliminaries. The amended complaint named, inter alia, individual county commissioners and individual members of the Lewis and Clark County Fair Commission. These persons were later dismissed as defendants. After that dismissal there remained as defendants the County of Lewis and Clark, the Fair Board, Golden State Rodeo Co. and John Doe I-X.

Two of plaintiff's counts were abandoned before trial, leaving this situation: Plaintiff Keith W. Ross sued to recover damages for the wrongful death of Jeffery Ross his infant son, which occurred on August 1, 1971, at the Last Chance Stampede and Fair at Lewis and Clark County fairgrounds. There remained two counts of the complaint (1) the action of plaintiff individually for the wrongful death of his son and, (2) the action of plaintiff as administrator of the estate of his deceased minor son under Montana's general survival statute.

Following judgment and after appeal was taken against all defendants, additional and new counsel came into the case for plaintiff. At that time, plaintiff dismissed the appeal as to Lewis and Clark County, Last Chance Stampede and Fair Association, Inc., and John Doe I-X, expressing the intent to appeal only as to one defendant, Golden State Rodeo Co. An order was made, ex parte, permitting this. The significance of the narrowing of the appeal will appear hereinafter.

The rodeo at which the death of the boy occurred took place at the Lewis and Clark County fairgrounds. For a number of years the county has hired or contracted with Golden State to bring rodeo

stock to Helena and to produce a rodeo known as the Last Chance Stampede. Facilities for the show were erected and maintained by the county. Testimony was given that such facilities were excellent and better than adequate. The county not only supplied the facilities but supplied security personnel to protect the spectators.

On the date of the accident plaintiff's family had come to Helena to attend the rodeo and had been on the grounds for some period of time prior to the accident. A Brahma bull riding event was the last event of the rodeo. Plaintiff had purchased tickets which entitled his family to seats. Before the accident plaintiff left his seat and was in a "restricted area" for some time--approximately an hour-- with his three year old son. The "restricted area" was an area around one of the arena gates. While there were no obstacles or constructions to physically restrain anyone from approaching or standing in the area of the gate, there were repeated warnings by public announcement and oral warnings by uniformed security personnel. The gate was about six feet high, the same height as the fence around the arena.

The Brahma bull "Yellow Fever" threw its rider; then trotted over to the gate in question and jumped on it, fell on over to the other side and landed on the three year old boy. The boy died of his injuries before he reached the hospital.

The bull Yellow Fever was variously described as a "good" bull, one of our "best" bulls, a "good performer", a "vicious" bull. An expert on Brahma bulls described them as being the "most active domestic animals".

The issues on appeal are three: (1) Whether the district court erred in not directing a verdict on the issue of liability; (2) Error in instructions; and (3) Whether the verdict is supported by the facts.

The main thrust of appellant's appeal is that there existed under the facts presented a situation where defendant Golden State Rodeo Co. was negligent as a matter of law, and thus the issue should not have been submitted to the jury. It is important to remember that

- 3 -

here we are concerned only with Golden State Rodeo Co. Golden State, under the evidence, was the show producer in the arena only. It had no control over spectators, including plaintiff and his son. Defendants who had control of, and the resultant duty to the spectators have, for reasons known only to plaintiff, been dismissed from the appeal.

Thus, we only look narrowly to the proof as it concerns Golden State. The only proof was that Golden State furnished the bull "Yellow Fever"; that the bull was dangerous; and, that he had been known to jump fences. Plaintiff, we believe, throughout the trial and here, believed that an owner of a vicious or dangerous animal is an insurer.

In Hansen v. Brogan, 145 Mont. 224, 400 P.2d 265, where a tourist was gored by a buffalo, plaintiff had stopped at a public resort owned by defendant. This resort had a corral containing animals. Plaintiff stood near the fence and a buffalo charged into it, injuring plaintiff. The jury found in favor of plaintiff. The complaint alleged the defendant, in keeping wild animals, was an insurer of plaintiff's safety and was strictly liable for injuries. The complaint also alleged a general negligence theory and denied any negligence on plaintiff's part. Defendant alleged contributory negligence and assumption of risk. The trial court ruled out all of defendant's proof on contributory negligence, assumption of risk, and knowledge of the vicious nature of the animal. The court granted a directed verdict in favor of plaintiff on the issue of liability; a ruling requested of the trial court in the instant case but which it correctly denied.

In Hansen this Court concluded that the law of negligence was preferable and the trial court was in error in limiting the evidence of defendant and directing a verdict on liability in favor of plaintiff. While Hansen established the law of negligence, it did not purport to establish the standard of care. However, Hansen did cite with approval 2 Harper and James, The Law of Torts, p. 839, that the:

- 4 -

"* * * degree of care which must be exercised in
the keeping of an animal will depend upon its nature
and will obviously be higher in the case of a tiger
than a dog."

In Thompson v. Yellowstone Livestock, 133 Mont. 403, 413,
324 P.2d 412, the Court quoted with approval from Potter v. Thompson,
74 Cal.App.2d 474, 477, 169 P.2d 40, where defendants were charged
with negligence in failing to provide a reasonably safe enclosure
and adequate supervision of the customers. This Court said in
Thompson:

"When the cow went on a rampage, instead of opening
the gate for it to escape, or attempting to other-
wise protect the spectators, the attendants 'got out
of there as quick as possible.' The defendant Clint
Thompson, admitted that he was present on an occasion
about a year and a half before this incident, and saw
another cow escape from the enclosure by going over or
through the fence 'between the cables.'

"At the conclusion of the trial, the jury returned
a verdict in favor of the defendants, finding that they
were 'not guilty of negligence.' A judgment was rendered
accordingly. A motion for new trial was granted on the
specified ground of insufficiency of the evidence to
support the verdict. From that order, an appeal was taken.
The appellate court said [74 Cal.App.(2d) 474, 169 P.2d 42]:

"'The chief contention of the appellants is that the
court abused its discretion in granting a new trial since
the uncontradicted evidence clearly shows that they were
not guilty of negligence, and that they had no knowledge
of the fact that the cow in question was nervous or
dangerous to the spectators.

"'In determining whether the defendants were guilty of
negligence which proximately caused the injuries complained
of, it was the duty of the jurors, and the trial judge upon
the motion for new trial, to consider all of the proved
facts and circumstances surrounding the incident. The
question to be determined is, what would a reasonably
prudent person be required to do, under such circumstances,
for the protection of his invited customers. The fact that
the defendants did not actually know that the particular cow
in question was fractious, nervous or dangerous does not
necessarily acquit them of negligence on that score. They
were expert auctioneers of cattle, who had been in that
business for several years. They had handled and sold hun-
dreds of cows. We must assume that some of the animals
were likely to become fractious, irritable, nervous and
dangerous. The defendants handled and sold cattle which
we assume had various temperaments, tendencies and natures.
On a former occasion another fractious cow broke through
the enclosure. It is not unreasonable to assume that the
defendants should have anticipated that some of the cows
would become uncontrollable and restort to dangerous be-
havior when driven into the small enclosure in the presence
of spectators. Since it was the duty of the defendants to
provide a reasonably safe enclosure, it is a proper inquiry

- 5 -

as to whether a fence 4 feet 8 inches high, with a sagging upper cable, is reasonably safe for the protection of prospective customers who are seated adjacent thereto. The court might reasonably infer that the enclosure was unsafe, and that defendants should have added another cable to increase the height of the fence, or at least that they should have tightened the sagging top cable. The court also had a right to assume it was the duty of the defendants to provide attendants to reasonably guard the cattle in the enclosure, and that, instead of fleeing for their own safety when the cow went upon a rampage, they should have opened the gate to permit the animal to escape, or otherwise restrain it for the protection of the spectators.

"'These and other question were proper for the judge to consider on the motion for new trial. Certainly this court may not hold as a matter of law that the judge abused his discretion in granting a new trial merely because he disagreed with the jury regarding the defendants' exercise of ordinary care where there is a serious conflict of evidence upon that subject, as there was in this case.

"'The plaintiff, Marie Porter, was an invitee. She was a prospective purchaser of cattle at the auction sale which was being conducted by the defendants. It was defendants' duty to exercise reasonable care to maintain supervision and a reasonably safe enclosure and seats for the customers.* * *'"

In the foreoing quoted case the standard of care discussed was reasonable care to maintain supervision and a reasonably safe enclosure and seats for customers.

Thompson involved a livestock auction ring where a customer was in his seat and a cow jumped a fence landing on the customer. In the instant case appellant cites Thompson as supporting the refusal of an instruction on ordinary care. However, the opinion in Thompson shows that the standard of care instruction refused was as to the knowledge of a propensity or tendency of the cow. As a matter of fact, Thompson used a reasonable or ordinary standard of care. The judgment there was for plaintiff and we affirmed.

Thompson is somewhat similar to the instant case. Even though appellant here states that the animal in Thompson causing the injury was not a vicious bull, but a simple cow, the result is the same. Here, the bull was not attacking but jumping, just as the fractious though simple cow did in Thompson. Also, and even more significant, in the instant case the owner of the animal is the only remaining defendant whereas in Thompson the owner of the animal was not a defendant. Rather, there the Livestock Commission Co., who operated the sales ring--like the county and fair board here-- was the defendant.

In <u>Thompson</u>, in discussing the motion of defendant for nonsuit, this Court said:

> "It is a general rule that in a motion for nonsuit, the evidence must be accepted and taken most favorably to plaintiff, and that even doubtful inferences and deductions must be resolved favorably toward plaintiff. The evidence in this case as introduced by plaintiff, clearly established that he was present as a business invitee and that it was defendant's duty to use ordinary care to keep the premises in a reasonably safe condition. This fact having been very strongly established, the judge properly overruled and denied defendant's motion for a nonsuit."

In the instant case, the remaining prevailing party has the benefit of that reasoning.

As heretofore pointed out the voluntary dismissal of Lewis and Clark County and the Fair Board, leaves only the duty of Golden State Rodeo Co. to be considered here. What failure in the exercise of any standard of care, reasonably or otherwise, was proven here as to Golden State Rodeo Co.? The jury found none.

Appellant's second issue regarding instructions quarrels with the trial court giving an instruction on ordinary care of a reasonable and prudent person acting under the circumstances. Appellant urges that a higher degree of care would be required than ordinary care. However, again the significance of the volunary dismissal of the other defendants appears. With only Golden State Rodeo Co. to consider, there was an absence of proof of any negligence as a proximate cause so that the giving of the instruction could not have been prejudicial.

While we rule here that no evidence of negligence was proven against the remaining defendant, we are not to be understood that an instruction on ordinary or reasonable care would be sufficient had there been proof of any negligence as to that remaining defendant.

We are impressed with the discussion by the Utah Court in Tom v. Days of '47, Inc., 16 Utah 2d 386, 401 P.2d 946, 948, where that Court said:

> "Defendant contends that the court committed prejudicial error because it unduly emphasized plaintiff's theory and practically directed a verdict on the issue of negligence because it instructed the jury that defendant had a duty to construct a fence that would be safe for the

- 7 -

purpose for which it was intended, that is, to keep
the bull out of the bleachers, and that it had a
further duty to use reasonable diligence to inspect
the fence to see that it was in proper condiction to
fulfill this requirement, and that if it failed in
either of these duties the defendant would be negligent.
Then, after giving this instruction the court unduly
emphasized plaintiff's evidence by further instructing
the jury that it must find whether defendant was negli-
gent in building the fence with the chain link wire
on the grandstand side of the posts, using the type of
fastening it did and in failing to have a rail or
tension wire or other obstruction between the ground
and the bottom of the fence.

"It is to be noted that the uncontradicted evidence
was to the effect that the Brahma bull was trained to
be belligerent and in its performance at the rodeo was
goaded to be mean. For show purposes, the meaner the
bull is, the more spectacular it is considered to be
for the audience. It is also to be noted that there was
no question as to how the fence was built or the type of
materials used in the fence. The only controversy in
regard to the fence was its adequacy for the purpose for
which it was built, that is, to keep the performing ani-
mals in the arena and away from spectators. Both plain-
tiff and defendant presented the views of experts on this
problem. Plaintiff's experts pointed out what they con-
sidered its deficiencies and defendant's experts testified
that as built, the fence was as good or better for the
purpose intended than usually is found in other places where
rodeos are held. The jury found the opinions of plaintiff's
experts more convincing.

"It cannot be gainsaid that to be free of negligence a
higher degree of care is required of a possessor for the
containment of a known vicious or dangerous animal than
in the case of an ordinary, domestic animal with less
known dangerous propensities. It is readily foreseeable
that a vicious animal is highly dangerous to persons with
whom it might come in contact, and, therefore, the
possessor must use greater care to forestall such contact.
The court's instructions were consonant with this greater
duty of care but left it to the jury to determine whether
defendant had used such care in the construction and in-
spection of the fence so that it was safe for the use for
which it was intended. The gist of an action for injuries
against the possessor of a dangerous animal is the failure
to use care commensurate with its known vicious tendencies
to keep the animal securely contained.The failure to use such
care is negligence, and if such negligence is the proximate
cause of the injuries sustained by the plaintiff, the
possessor of the animal is liable. The fact that plaintiff
did not pay for viewing the performance and may have been
a mere licensee did not change defendant's liability. Un-
like the rules in cases imposed on possessors of land for
injuries caused by the dangerous physical conditions of the
lands, no distinction between business invitees and licensees
are made as to liability of the possessor of a dangerous
domestic animal for injures sustained by either."

In the instant case plaintiff offered an instruction from the

Montana Jury Instruction Guide, No. 110.04, which reads:

"ANIMALS-INJURY BY VICIOUS DOMESTIC ANIMAL.

"Jury Instruction No. 110.04

"One who owns or keeps an animal known by him to be of vicious tendencies and dangerous to people is liabile to a person injured by such animal, unless the injured party is guilty of negligence contributing directly to the injury. The injured party is guilty of such negligence if:

"(1) He has done something a reasonable person should have known was likely to provoke an attack by the animal; or

"(2) He knew of an unusual characteristic of the animal and did something which a reasonable person could reasonably expect to provoke an attack by that particular animal; or

"(3) He intentionally and unreasonably exposed himself to injury, either knowing the customary nature of that kind of animal or knowing the particular nature of the specific animal."

That instruction would make the owner of the bull an insurer unless one of the three exceptions as to contributory negligence applied. The instruction was not applicable in any event.

Finding no error, the judgment is affirmed.

_____
Justice

We Concur:

_____

_____
Justices

_____
Hon. M. James Sorte, District Judge, sitting for Chief Justice James T. Harrison.

- 9 -

Honorable M. James Sorte, District Judge, sitting for Chief Justice James T. Harrison, specially concurring:

I concur in the result. However, it seems to me that defendant Golden State Rodeo Co. was the only defendant that knew of the particular dangerous propensities of the bull "Yellow Fever". If this question had been presented to the jury there might have been a different result.

.. .. .... .... .................... .... .... .... .... .. ....

Mr. Justice Gene B. Daly dissenting:

I dissent.

The majority opinion seems to conclude that the dismissal of the Fair Board and Lewis and Clark County, leaving the Golden State Rodeo Co. alone as defendant, excluded all of the defendants who owed a duty to the patrons at the rodeo because it is claimed the rodeo company had no control over the spectators. I disagree. If the rodeo company's duty was arrived at in this manner, it could exhibit its "bull" without any fence.

I find no authority to support the doctrine that the manner in which the known vicious bull approached the fence enclosure, through it or over it, could characterize him legally as a "fractious" bull. I feel the owners and exhibitors of this kind of animal have a duty and are held to a higher degree of care than set forth in the majority opinion, regardless of the duty or negligence of any other parties.

- 10 -