ROY V. HANSEN, Plaintiff and Respondent, *v.* W. E. BROGAN, Defendant and Appellant.

No. 10812

Submitted February 15, 1965. Decided March 19, 1965.

400 P.2d 265.

Lyman H. Bennett, Jr. (argued), Bozeman, for appellant.

Arnold Huppert, Jr. (argued), Jack Shanstrom, Livingston, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment for plaintiff entered on a jury verdict in the amount of $65,000. Motions for a judgment notwithstanding the verdict and for a new trial were made and denied. The verdict was directed insofar as liability was concerned, with the only problem left to the jury as to the amount of damages.

The cause arose from a goring of plaintiff by a buffalo. Plaintiff was a tourist from Kentucky, who with his family was enroute to Yellowstone Park. Plaintiff stopped at Corwin Hot Springs to view some buffalo, elk, deer and animals displayed to attract tourists. Corwin Hot Springs is a public resort owned by defendant. Defendant had what is called a corral which contained the animals, running together.

According to plaintiff, he approached to about two feet from a woven wire fence, behind which was a large buffalo eating hay. The buffalo was about 10 or 15 feet from the fence. Plaintiff had one youngster by the hand, and as he turned to grasp another youngster by the hand, he was hit by the charging buffalo, through the fence, gored severely and tossed into the air.

As described by an eyewitness, "then out of nowhere it [the buffalo] just turned it's head, there was no warning or nothing—and charged the fence. * * * The fence gave—I don't know, it just seemed to give a good two or three feet, I'd say, and he was standing there with his two kids and all I know just lifted him right up in the air—* * *."

The complaint alleged two counts. Count (1) is on the basis that a keeper of a wild animal is an insurer and strictly liable for all injuries caused by said animal. Count (2) was

a general negligence theory. More specifically the pleadings were as follows:

The complaint alleged that the defendant was the owner of Corwin Hot Springs Resort; that there were public grounds to which the public was invited. This was admitted by the answer.

Paragraph II alleged that on August 10, 1961, the defendant maintained a corral in which he kept an American Bison, elk and other "untamed, savage and ferocious animals" which were kept as a tourist attraction. The answer admitted everything except as to the animals, only admitted that they were "untamed".

Paragraph III alleged that the animals were untamed, savage and ferocious, all of which was well-known to the defendant and that they were not confined or excluded from contact with people who stopped to view said animals, except by an insufficient, insecure and open fence. The answer admitted only that the animals kept by the defendant were untamed, and were known by him to be untamed, and denied everything else.

Paragraph IV alleged that the corral was located near Highway 89, places provided for parking, and visitors allowed and invited to leave their autos and view the untamed, savage and ferocious animals and to pass in close proximity so that the animals could cause injury to such persons. The answer admitted the location of the corral, the invitation to park and view the animals, but denied the other matters.

Paragraph V of the complaint alleged that plaintiff parked his auto and left it to view the animals when, *without any negligence on the part of the plaintiff,* the buffalo lunged at plaintiff through said "insecure and insufficient fence", and hooked and gored plaintiff causing injury. The answer admitted the parking and viewing but denied the other matters.

Paragraph VI alleged:

"The defendant by keeping said wild animals and more

particularly said American Bison is an insurer and is strictly liable for all injuries or damages caused by said animal to plaintiff."

The answer denied this. Then in a separate paragraph the answer generally denied each allegation of count (1) not admitted.

By count (2) of the complaint, the plaintiff realleged Paragraphs I through V as set forth above, and then alleged that the injuries were proximately and directly caused by negligence, carelessness, recklessness and heedlessness of the defendant, who was well aware of and had full knowledge and notice of the ferocious and savage nature and ugly disposition of the untamed, savage and ferocious animals known as American Bison; and then repeated the negligence of the defendant in keeping them behind an open, insecure and insufficient fence and in inviting the public and particularly, the plaintiff, to come in close proximity to said fence where contact with said animals might well ensue and that it was heedless, reckless and negligent of the defendant to keep said animals in such an exposed place and that it was negligent of the defendant to keep them anywhere without having them securely fastened, restrained or enclosed.

In response to this, the defendant in his answer realleged the matters set forth hereinbefore as an answer to count (1).

By a fifth defense, not limited to either the first or second count of the Complaint, the defendant alleged, "That the injuries and damages sustained by the plaintiff were proximately and directly caused, or contributed to, by negligence of the plaintiff."

By a sixth defense, defendant pleaded, "That the plaintiff voluntarily assumed the risk of the injury and damage sustained by the plaintiff * * *."

With this state of the pleadings the cause went to trial. There was no pre-trial or any amendments or any apparent selection of the theory of plaintiff's case, except that the

trial judge ruled out, on objections, all the defendant's proof concerning contributory negligence, assumption of risk and knowledge of the vicious nature of the buffalo.

Then, at the close of the case, the trial judge granted a directed verdict on liability. The trial judge specifically refused to instruct on any negligence theory, but apparently had the view that the keeper of a wild animal is an insurer. We have remarked before that the record does not reveal any election of remedies or any striking of defenses. The respondent's brief handles this simply by saying, "It was clear that the plaintiff and the court abandoned the second count of the complaint and relied on the first count, or that of strict liability."

Further, we have detailed the pleadings to a considerable extent to demonstrate that the defenses of contributory negligence and assumption of risk were specifically pleaded.

The appellant, defendant below, sets up twenty-two specifications of error. The specifications search rulings on evidentiary matters, the directed verdict, and the giving and refusing of instructions. In addition the specifications go to the refusal to grant a new trial and the refusal to direct a verdict for defendant.

We shall rule on but two issues, believing that in a new trial of this cause, certain alleged errors on rulings on evidentiary matters will not be repeated.

The two issues are:

(1) What is the duty owed by the keeper of the untamed animals?

(2) Was the defendant entitled to a directed verdict?

We believe it proper to comment further concerning the record before us. We are unable to discern even where the goring took place. The plaintiff and the eyewitness testified that the place where plaintiff was standing was bare ground, as if it were a beaten path. Yet, the eyewitness testified postively on direct, and again on rebuttal that a photograph,

Exhibit I, was of the exact place where the accident occurred, it being clearly revealed in the photograph that the ground was cluttered with foliage of some kind, poles or posts lying there. Additionally the witnesses demonstrated on exhibits with words such as "here", "there", etc., so that this reviewing Court cannot know where "here" and "there" might be.

We point out the foregoing because it emphasizes that the trial court ruled, not that the facts established negligence as a matter of law, but rather, that the keeper of a wild animal is an insurer.

This is a case of first impression in Montana.

In 4 Am.Jur.2d, Animals, § 80, the rule of the doctrine of absolute liability is stated and discussed together with the English precedents. Also, in 69 A.L.R. 501, an annotation of Vaughan v. Miller Bros. "101" Ranch Wild West Show, 109 W.Va. 170, 153 S.E. 289, discusses the rule.

Section 81 of 4 Am.Jur.2d, Animals, discusses the view repudiating the doctrine of absolute liability, with negligence as the basis of liability. Such section reads as follows:

"To some courts, the test to determine the nature of the owner's responsibility for injuries caused by an animal, that is, whether they are *ferae naturae* or *domitae naturae,* has seemed illogical and artificial, and they have preferred to determine such liability, not so much by their classification into wild and domestic, as by their natural propensity for mischief. Much of the authority in support of the rule of absolute liability for injuries by wild animals based upon possession alone is mere dictum, and the doctrine has been squarely repudiated by some courts. According to these courts, the gist of an action against the owner or keeper of a wild animal for injuries inflicted by it is negligence in the manner or place of keeping the animal—that is, negligence in failing properly to restrain the animal or keep it securely. Under this view, while any person has an undoubted right to keep a wild animal, and no one has a right to interfere with him

in so doing, he may be held liable for resulting injuries if he has not exercised reasonable and proper care in the particular circumstances, considering the nature and tendencies of the particular animal, in restraining or securing it."

Respondent in this instant case cites Collins v. Otto, 149 Colo. 489, 369 P.2d 564. In that case, a four-year-old child permitted to pet a coyote pup, was later attacked by the chained coyote mother. There the Colorado Court quoted the rule of strict liability from Am.Jur. and ruled that the trial court should have directed a verdict on liability. From the opinion, it seems that facts constituting negligence as a matter of law were established and that a four-year-old, being incapable of contributory negligence was involved. While the case is sound from our viewpoint, it does not necessarily stand for a rule of "absolute liability", "insurer", "liable under all circumstances" as the terms are variously used.

In Harper and James, The Law of Torts, Vol. 2 at page 839, the authors discuss the "strict liability" doctrine from English precedents and report:

"In January, 1953, the English Committee on the Law of Civil Liability for Damage Done by Animals in its report recommended the abolition of the distinction between animals *ferae naturae* and those *mansuetae naturae*. 'The development of this distinction has made the law intricate and complicated,' said the Committee. 'This branch of the law grew up when the law of negligence was in its infancy. In our opinion this latter action has so developed in modern times as to render the distinction unnecessary. We propose that it should be abolished; and that * * * liability for the acts of every class of animal should be based on negligence.' The Committee then went on to say that in its opinion such a change would result in no practical diminution of liability because 'the degree of care which must be exercised in the keeping of an animal will depend upon its nature and will obviously be higher in the case of a tiger than a dog.'"

We have not gone to great lengths in discussing the numerous authorities. The author of the annotation in 69 A.L.R. at page 500, states:

"The authorities on the present subject are to a considerable extent in conflict. To a larger extent, however, they are not clear and consistent, but are, even in the same opinion, confusing and seemingly inconsistent. This is due, perhaps primarily, to the dicta in the opinions. It may be said at the outset that, while there is considerable direct authority and much dicta in favor of the rule of absolute liability of the owner or keeper of a wild animal for injuries inflicted by it, the trend of the authorities appears to be away from the rule, or to limit or qualify it."

We conclude that the law of negligence is preferable, and that the trial court was in error in limiting the evidence and directing the verdict.

However, since this matter is to be retried, we shall comment further on one feature. The complaint, as related hereinbefore, alleged knowledge on the part of the defendant of the vicious propensities of the buffalo. No proof was submitted on this by the plaintiff, but the defendant offered to prove that the buffalo was in fact tame. We believe the proper rule to be that as to an animal, a wild animal (See Restatement, Torts, § 506) *scienter,* or notice of the character of a wild animal may be imputed to an owner sufficient to make a prima facie case.

We have not attempted here to clearly state the facts of the accident here. Partly because of the state of the record, and partly because the proof was limited in view of what we now have determined as the erroneous belief of the trial court that the owner of a wild animal is an insurer.

Our second question posed was whether the defendant was entitled to a directed verdict. Defendant, appellant here, argues that the evidence showed that the plaintiff brought his injury upon himself, that plaintiff, a college graduate, saw

warning signs and nevertheless stood too close to the fence and was gored by the buffalo without its having escaped the enclosure. Other than merely stating the conclusion, appellant does not seriously argue that he should have a directed verdict. We believe it clear that he should not.

We have not discussed various rulings on evidentiary matters because in a retrial of the issues they are not likely to again arise.

For the foregoing reasons the judgment is reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON, DOYLE and ADAIR concur.