267 So.2d 864 (1972)
Scott ISAACS, a Minor, by His Father and Natural Guardian, Howard Isaacs, Appellant,
v.
Lester M. POWELL and Arlyss R. Powell, Doing Business As Monkeytown, U.S.A., Appellees.
No. 71-683.
District Court of Appeal of Florida, Second District.
October 4, 1972.
Rehearing Denied November 13, 1972.
William F. Blews, of Chambers & Blews, St. Petersburg, for appellant.
John T. Allen, Jr., and Harrison, Greene, Mann, Davenport, Rowe & Stanton, St. Petersburg, for appellees.
*865 McNULTY, Judge.
This is a case of first impression in Florida. The question posed is whether Florida should adopt the general rule that the owner or keeper of a wild animal, in this case a chimpanzee, is liable to one injured by such animal under the strict liability doctrine, i.e., regardless of negligence on his part, or whether his liability should be predicated on his fault or negligence.[1]
Plaintiff-appellant Scott Isaacs was two years and seven months old at the times material herein. His father had taken him to defendants-appellees' monkey farm where, upon purchasing an admission ticket, and as was usual and encouraged by appellees, he also purchased some food to feed the animals. While Scott was feeding a chimpanzee named Valerie she grabbed his arm and inflicted serious injury.
The exact details of how Valerie was able to grab Scott's arm are in dispute. Appellees contend that Scott's father lifted the boy above reasonably sufficient protective barriers to within Valerie's reach, while appellants counter that the barriers and other protective measures were insufficient. But in any case, appellants do not now, nor did they below, rely on any fault of appellees. Rather, they rely solely on the aforesaid generally accepted strict or, as it is sometimes called, absolute liability doctrine under which negligence or fault on the part of the owner or keeper of an animal ferae naturae is irrelevant.[2] Appellees, on the other hand, suggest that we should adopt the emerging, though yet minority, view that liability should depend upon negligence, i.e., a breach of the duty of care reasonably called for taking into account the nature and specie of the animal involved.[3] We will consider this aspect of the problem first and will hereinafter discuss available defenses under the theory we adopt.
The trial judge apparently agreed with the appellees that fault or negligence on the part of the owners of a wild animal must be shown. He charged the jury on causation as follows:
"The issues for your determination are whether the proximate cause of Scott Isaacs' injuries was the improper protection for paying customers of the defendants in the condition of the cage, and whether the approximate cause of (sic) the placing of Scott by his father, Howard Isaacs, within the barrier placed by the defendants for the protection of customers of the defendant."
In other words the trial judge asked the jury to decide whether Scott was injured through the fault of defendants-appellees and/or through the fault of his father. The jury returned a verdict for the defendants; but obviously, it's impossible for us to determine whether, under the foregoing charge, the jury so found because they were unable to find fault on defendants' part, or whether they so found because they believed the cause of Scott's injury to be the fault of the father. If, of course, we adopt the negligence theory of liability there would be no error in submitting both issues to the jury. But we are of the view that the older and general rule of strict liability, which obviates the issue of the owner's negligence, is more suited to the fast growing, populous and activity-oriented society of Florida. Indeed, our society imposes more than enough *866 risks upon its members now, and we are reluctant to encourage the addition of one more particularly when that one more is increasingly contributed by those who, for profit, would exercise their "right" to harbor wild animals and increase exposure to the dangers thereof by luring advertising. Prosser puts it this way:[4]
"... [Liability] has been thought to rest on the basis of negligence in keeping the animal at all; but this does not coincide with the modern analysis of negligence as conduct which is unreasonable in view of the risk, since it may not be an unreasonable thing to keep a tiger in a zoo. It is rather an instance of the strict responsibility placed upon those who, even with proper care, expose the community to the risk of a very dangerous thing. While one or two jurisdictions insist that there is no liability without some negligence in keeping the animal, by far the greater number impose strict liability." (Italics supplied)
Additionally, we observe that Florida has enacted § 767.04, F.S.A.,[5] relating to dogs, which abrogates the permissive "one bite" rule of the common law. That rule posited that an owner of a dog is liable to one bitten by such dog only if he is chargeable with "scienter," i.e., prior knowledge of the viciousness of the dog. Necessarily, of course, the cause of action therefor was predicated on the negligence of the owner in failing to take proper precautions with knowledge of the dog's vicious propensities.[6] Our statute, however, has in effect imposed strict liability on a dog owner (from which he can absolve himself only by complying with the warning proviso of the statute). It would result in a curious anomaly, then, if we were to adopt the negligence concept as a basis for liability of an owner or keeper of a tiger, while § 767.04, supra, imposes potential strict liability upon him if he should trade the tiger for a dog. We are compelled to adopt, therefore, the strict liability rule in these cases.
Concerning, now, available defenses under this rule we share the view, and emphasize, that "strict or absolute liability" does not mean the owner or keeper of a wild animal is an absolute insurer in the sense that he is liable regardless of any fault on the part of the victim. Moreover, we do not think it means he is liable notwithstanding an intervening, efficient independent fault which solely causes the result, as was possibly the case here if fault on the part of Scott's father were the sole efficient cause.
As to the fault of the victim himself, since the owner or keeper of a wild animal is held to a rigorous rule of liability on account of the danger inherent in harboring such animal, it has generally been held that the owner ought not be relieved from such liability by slight negligence or want of ordinary care on the part of the person injured. The latter's acts must be such as would establish that, with knowledge of the danger, he voluntarily brought the calamity upon himself.[7] This general *867 rule supports the Restatement of Torts, § 515,[8] which we now adopt and set forth as follows:
"(1) A plaintiff is not barred from recovery by his failure to exercise reasonable care to observe the propinquity of a wild animal or an abnormally dangerous domestic animal or to avoid harm to his person, land or chattels threatened by it.
(2) A plaintiff is barred from recovery by intentionally and unreasonably subjecting himself to the risk that a wild animal or an abnormally dangerous domestic animal will do harm to his person, land or chattels." (Italics supplied)
With regard to an intervening fault bringing about the result we have no hesitancy in expanding the foregoing rule to include as a defense the willful or intentional fault of a third party provided such fault is of itself an efficient cause and is the sole cause. If a jury were to decide in this case, therefore, that the sole efficient cause of Scott's injury was the intentional assumption of the apparent risks on the part of the boy's father and his placing of the boy within reach of the danger, it would be a defense available to appellees. Clearly, though, this defense would be related only to causation and is not dependent upon any theory of imputation of the father's fault to the son, which is now irrelevant in view of the extent of strict liability in these cases and the limited defenses available thereunder.
The judgment is reversed and the cause is remanded for a new trial on the theory of strict liability, and the defenses thereto, as enunciated above.
Reversed.
HOBSON, A.C.J., and MANN, J., concur.
NOTES
[1] Although the precise question has never been decided in Florida, our sister court in the third district recognized the general rule in dictum while deciding that the bees involved in that case were not wild animals and thus the rule of negligence applied regardless. Ferreira v. D'Asaro (Fla.App. 1963), 152 So.2d 736.
[2] See, e.g., Anno., 21 A.L.R.3d pp. 608, 618; 4 Am.Jur.2d, Animals, § 80 et seq.; and Prosser, Law of Torts, § 75, Animals, p. 513.
[3] See, e.g., Hansen v. Brogan (1965), 145 Mont. 224, 400 P.2d 265, 21 A.L.R.3d 595; and Anno., 21 A.L.R.3d, 618, 622.
[4] See, Prosser, n. 2, at p. 513.
[5] This section provides, in pertinent part:

"The owners of any dog which shall bite any person, while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of such dogs, shall be liable for such damages as may be suffered by persons bitten, regardless of the former viciousness of such dog or the owners' knowledge of such viciousness. ...; Provided, however, no owner of any dog shall be liable for any damages to any person or his property when such person shall mischievously or carelessly provoke or aggravate the dog inflicting such damage; nor shall any such owner be so liable if at the time of any such injury he had displayed in a prominent place on his premises a sign easily readable including the words `Bad Dog.'" (Italics supplied.)
[6] This indeed was also basis at common law of liability on the part of an owner of any animal domitae naturae. See, e.g., Prosser, n. 2, supra, pp. 514, 517.
[7] See, e.g., 21 A.L.R.3rd, n. 2, supra, pp. 615, 618.
[8] This rule is duplicated in § 484, Restatement, Torts 2d, which states that the plaintiff's contributory negligence is not a defense to the strict liability of the possessor of an animal, except where such contributory negligence consists in voluntarily and unreasonably subjecting himself to the risk of harm from the animal.