KEITH W. ROSS, Individually, and KEITH W. ROSS, as Aministrator of the Estate of JEFFERY WADE ROSS, a Deceased minor child, and Representative and Successor in Interest of JEFFERY WADE ROSS, a Deceased minor child, and CONNIE J. ROSS, Plaintiff and Appellant, v. GOLDEN STATE RODEO COMPANY, a Corporation, Defendant and Respondent.

No. 12554.
Submitted June 17, 1974.
Decided Nov. 26, 1974.
Rehearing Denied Feb. 5, 1975.
530 P.2d 1166.

338

The HONORABLE M. JAMES SORTE, District Judge, filed special concurring opinion.

MR. JUSTICE DALY filed dissenting opinion.

Graybill, Graybill, Ostrem & Warner, Great Falls, Harrison, Loendorf & Poston, Helena, Jerome T. Loendorf argued, Helena, for plaintiff and appellant.

Risken & O'Leary, Helena, John H. Risken argued, Helena, for defendant and respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment for defendants entered on a jury verdict. Plaintiff appeals following denial of motions for judgment notwithstanding the verdict and new trial. The case was tried in Lewis and Clark County, Hon. Gordon Bennett presiding.

Because the issues on appeal are rather narrowly stated, to understand our holding here it is important to discuss some of the preliminaries. The amended complaint named, inter alia, individual county commissioners and individual members of the Lewis and Clark County Fair Commission. These persons were later dismissed as defendants. After that dismissal there remained as defendants the County of Lewis and Clark, the Fair Board, Golden State Rodeo Co. and John Doe I-X.

Two of plaintiff's counts were abandoned before trial, leaving this situation: Plaintiff Keith W. Ross sued to recover damages for the wrongful death of Jeffery Ross his infant son, which occurred on August 1, 1971, at the Last Chance Stampede and Fair at Lewis and Clark County fairgrounds. There remained two counts of the complaint, (1) the action of plaintiff individually for the wrongful death of his son and, (2) the action of plaintiff as administrator of the estate of his deceased minor son under Montana's general survival statute.

Following judgment and after appeal was taken against all defendants, additional and new counsel came into the case for plaintiff. At that time, plaintiff dismissed the appeal as to Lewis and Clark County, Last Chance Stampede and Fair Association, Inc., and John Doe I-X, expressing the intent to appeal only as to one defendant, Golden State Rodeo Co. An order was made, ex parte, permitting this. The significance of the narrowing of the appeal will appear hereinafter.

The rodeo at which the death of the boy occurred took place at the Lewis and Clark County fairgrounds. For a number of years the county has hired or contracted with Golden State to bring rodeo stock to Helena and to produce a rodeo known as the Last Chance Stampede. Facilities for the show were erected and maintained by the county. Testimony was given that such facilities were excellent and better than adequate. The county not only supplied the facilities but supplied security personnel to protect the spectators.

On the date of the accident plaintiff's family had come to

Helena to attend the rodeo and had been on the grounds for some period of time prior to the accident. A Brahma bull riding event was the last event of the rodeo. Plaintiff had purchased tickets which entitled his family to seats. Before the accident plaintiff left his seat and was in a "restricted area" for some time—approximately an hour—with his three year old son. The "restricted area" was an area around one of the arena gates. While there were no obstacles or constructions to physically restrain anyone from approaching or standing in the area of the gate, there were repeated warnings by public announcement and oral warnings by uniformed security personnel. The gate was about six feet high, the same height as the fence around the arena.

The Brahma bull "Yellow Fever" threw its rider; then trotted over to the gate in question and jumped on it, fell on over to the other side and landed on the three year old boy. The boy died of his injuries before he reached the hospital.

The bull Yellow Fever was variously described as a "good" bull, one of our "best" bulls, a "good performer", a "vicious" bull. An expert on Brahma bulls described them as being the "most active domestic animals".

The issues on appeal are three: (1) Whether the district court erred in not directing a verdict on the issue of liability; (2) Error in instructions; and (3) Whether the verdict is supported by the facts.

██ The main thrust of appellant's appeal is that there existed under the facts presented a situation where defendant Golden State Rodeo Co. was negligent as a matter of law, and thus the issue should not have been submitted to the jury. It is important to remember that here we are concerned only with Golden State Rodeo Co. Golden State, under the evidence, was the show producer in the arena only. It had no control over spectators, including plaintiff and his son. Defendants who had control of, and the resultant duty to the spectators

have, for reasons known only to plaintiff, been dismissed from the appeal.

Thus, we only look narrowly to the proof as it concerns. Golden State. The only proof was that Golden State furnished. the bull "Yellow Fever"; that the bull was dangerous; and, that he had been known to jump fences. Plaintiff, we believe, throughout the trial and here, believed that an owner of a. vicious or dangerous animal is an insurer.

In Hansen v. Brogan, 145 Mont. 224, 400 P.2d 265, where a tourist was gored by a buffalo, plaintiff had stopped at a. public resort owned by defendant. This resort had a corral containing animals. Plaintiff stood near the fence and a buffalo charged into it, injuring plaintiff. The jury found in favor of plaintiff. The complaint alleged the defendant, in: keeping wild animals, was an insurer of plaintiff's safety and was strictly liable for injuries. The complaint also alleged a general negligence theory and denied any negligence on plaintiff's part. Defendant alleged contributory negligence and assumption of risk. The trial court ruled out all of defendant's proof on contributory negligence, assumption of risk, and knowledge of the vicious nature of the animal. The court. granted a directed verdict in favor of plaintiff on the issue of liability; a ruling requested of the trial court in the instant case but which it correctly denied.

In *Hansen* this Court concluded that the law of negligence was preferable and the trial court was in error in limiting. the evidence of defendant and directing a verdict on liability in favor of plaintiff. While *Hansen* established the law of negligence, it did not purport to establish the standard of care. However, *Hansen* did cite with approval 2 Harper and James, The Law of Torts, p. 839, that the:

"* * * degree of care which must be exercised in the keeping of an animal will depend upon its nature and will obviously be higher in the case of a tiger than a dog."

In Thompson v. Yellowstone Livestock, 133 Mont. 403, 413,

324 P.2d 412, 418, the Court quoted with approval from Porter v. Thompson, 74 Cal.App.2d 474, 477, 169 P.2d 40, where defendants were charged with negligence in failing to provide a reasonably safe enclosure and adequate supervision of the customers. This Court said in *Thompson:*

"When the cow went on a rampage, instead of opening the gate for it to escape, or attempting to otherwise protect the spectators, the attendants 'got out of there as quick as possible'. The defendant, Clint Thompson, admitted that he was present on an occasion about a year and a half before this incident, and saw another cow escape from the enclosure by going over or through the fence 'between the cables'.

"At the conclusion of the trial, the jury returned a verdict in favor of the defendants, finding that they were 'not guilty of negligence'. A judgment was rendered accordingly. A motion for new trial was granted on the specified ground of insufficiency of the evidence to support the verdict. From that order, an appeal was taken. The appellate court said [74 Cal. App.2d 474, 169 P.2d 42]: " 'The chief contention of the appellants is that the court abused its discretion in granting a new trial since the uncontradicted evidence clearly shows that they were not guilty of negligence, and that they had no knowledge of the fact that the cow in question was nervous or dangerous to the spectators.

" 'In determining whether the defendants were guilty of negligence which proximately caused the injuries complained of, it was the duty of the jurors, and the trial judge upon the motion for new trial, to consider all of the proved facts and circumstances surrounding the incident. The question to be determined is, what would a reasonably prudent person be required to do, under such circumstances, for the protection of his invited customers. The fact that the defendants did not actually know that the particular cow in question was fractious, nervous or dangerous does not necessarily acquit them of negligence on that score. They were expert auctioneers

of cattle, who had been in that business for several years. They had handled and sold hundreds of cows. We must assume that some of the animals were likely to become fractious, irritable, nervous and dangerous. The defendants handled and sold cattle which we assume had various temperaments, tendencies and natures. On a former occasion another fractious cow broke through the enclosure. It is not unreasonable to assume that the defendants should have anticipated that some of the cows would become uncontrollable and resort to dangerous behavior when driven into the small enclosure in the presence of spectators. Since it was the duty of the defendants to provide a reasonably safe enclosure, it is a proper inquiry as to whether a fence 4 feet 8 inches high, with a sagging upper cable, is reasonably safe for the protection of prospective customers who are seated adjacent thereto. The court might reasonably infer that the enclosure was unsafe, and that defendants should have added another cable to increase the height of the fence, or at least that they should have tightened the sagging top cable. The court also had a right to assume it was the duty of the defendants to provide attendants to reasonably guard the cattle in the enclosure, and that, instead of fleeing for their own safety when the cow went upon a rampage, they should have opened the gate to permit the animal to escape, or otherwise restrain it for the protection of the spectators.

" 'These and other questions were proper for the judge to consider on the motion for new trial. Certainly this court may not hold as a matter of law that the judge abused his discretion in granting a new trial merely because he disagreed with the jury regarding the defendants' exercise of ordinary care where there is a serious conflict of evidence upon that subject, as there was in this case.

" 'The plaintiff, Marie Porter, was an invitee. She was a prospective purchaser of cattle at the auction sale which was being conducted by the defendants. It was defendants' duty

to exercise reasonable care to maintain supervision and a reasonably safe enclosure and seats for the customers.  *  *  *' "

In the foregoing quoted case the standard of care discussed was reasonable care to maintain supervision and a reasonably safe enclosure and seats for customers.

*Thompson* involved a livestock auction ring where a customer was in his seat and a cow jumped a fence landing on the customer. In the instant case appellant cites *Thompson* as supporting the refusal of an instruction on ordinary care. However, the opinion in *Thompson* shows that the standard of care instruction refused was as to the knowledge of a propensity or tendency of the cow. As a matter of fact, *Thompson* used a reasonable or ordinary standard of care. The judgment there was for plaintiff and we affirmed.

*Thompson* is somewhat similar to the instant case. Even though appellant here states that the animal in *Thompson* causing the injury was not a vicious bull, but a simple cow, the result is the same. Here, the bull was not attacking but jumping, just as the fractious though simple cow did in *Thompson*. Also, and even more significant, in the instant case the owner of the animal is the only remaining defendant whereas in *Thompson* the owner of the animals was not a defendant. Rather, there the Livestock Commission Co., who operated the sales ring—like the county and fair board here—was the defendant.

In *Thompson,* in discussing the motion of defendant for nonsuit, this Court said:

"It is a general rule that in a motion for nonsuit, the evidence must be accepted and taken most favorably to plaintiff, and that even doubtful inferences and deductions must be resolved favorably toward plaintiff. The evidence in this case as introduced by plaintiff, clearly established that he was present as a business invitee and that it was defendant's duty to use ordinary care to keep the premises in a reasonably safe condition. This fact having been very strongly established,

the judge properly overruled and denied defendant's motion for a nonsuit."

In the instant case, the remaining prevailing party has the benefits of that reasoning.

As heretofore pointed out the voluntary dismissal of Lewis and Clark County and the Fair Board, leaves only the duty of Golden State Rodeo Co. to be considered here. What failure in the exercise of any standard of care, reasonably or otherwise, was proven here as to Golden State Rodeo Co.? The jury found none.

Appellant's second issue regarding instructions quarrels with the trial court giving an instruction on ordinary care of a reasonable and prudent person acting under the circumstances. Appellant urges that a higher degree of care would be required than ordinary care. However, again the significance of the voluntary dismissal of the other defendants appears. With only Golden State Rodeo Co. to consider, there was an absence of proof of any negligence as a proximate cause so that the giving of the instruction could not have been prejudicial.

While we rule here that no evidence of negligence was proven against the remaining defendant, we are not to be understood that an instruction on ordinary or reasonable care would be sufficient had there been proof of any negligence as to that remaining defendant.

We are impressed with the discussion by the Utah Court in Tom v. Days of '47, Inc., 16 Utah 2d 386, 401 P.2d 946, 948, where that Court said:

"Defendant contends that the court committed prejudicial error because it unduly emphasized plaintiff's theory and practically directed a verdict on the issue of negligence because it instructed the jury that defendant had a duty to construct a fence that would be safe for the purpose for which it was intended, that is, to keep the bull out of the bleachers, and that it had a further duty to use reasonable diligence to in-

spect the fence to see that it was in proper condition to fulfill this requirement, and that if it failed in either of these duties. the defendant would be negligent. Then, after giving this instruction the court unduly emphasized plaintiff's evidence by further instructing the jury that it must find whether defendant was negligent in building the fence with the chain link wire on the grandstand side of the posts, using the type of fastening it did and in failing to have a rail or tension wire or other obstruction between the ground and the bottom of the fence.

"It is to be noted that the uncontradicted evidence was to the effect that the Brahma bull was trained to be belligerent. and in its performance at the rodeo was goaded to be mean. For show purposes, the meaner the bull is, the more spectacular it is considered to be for the audience. It is also to be noted that there was no question as to how the fence was built or the type of materials used in the fence. The only controversy in regard to the fence was its adequacy for the purpose for which it was built, that is, to keep the performing animals in. the arena and away from spectators. Both plaintiff and defendant presented the views of experts on this problem. Plaintiff's experts pointed out what they considered its deficiencies. and defendant's experts testified that as built, the fence was. as good or better for the purpose intended than usually is. found in other places where rodeos are held. The jury found. the opinions of plaintiff's experts more convincing.

"It cannot be gainsaid that to be free of negligence a higher degree of care is required of a possessor for the containment of a known vicious or dangerous animal than in the case of an ordinary, domestic animal with less known dangerous propensities. It is readily foreseeable that a vicious animal is highly dangerous to persons with whom it might come in contact, and, therefore, the possessor must use greater care to forestall such contact. The court's instructions were consonant. with this greater duty of care but left it to the jury to deter-

mine whether defendant had used such care in the construc-
tion and inspection of the fence so that it was safe for the use
for which it was intended. The gist of an action for injuries
against the possessor of a dangerous animal is the failure to
use care commensurate with its known vicious tendencies to
keep the animal securely contained. The failure to use such
care is negligence, and if such negligence is the proximate
cause of the injuries sustained by the plaintiff, the possessor
of the animal is liable. The fact that plaintiff did not pay for
viewing the performance and may have been a mere licensee
did not change defendant's liability. Unlike the rules in cases
imposed on possessors of land for injuries caused by the dan-
gerous physical conditions of the lands, no distinction between
business invitees and licensees are made as to liability of the
possessor of a dangerous domestic animal for injuries sustained
by either."

In the instant case plaintiff offered an instruction from
the Montana Jury Instruction Guide, No. 110.04, which reads:

"ANIMALS—INJURY BY VICIOUS DOMESTIC ANIMAL.

"Jury Instruction No. 110.04

"One who owes or keeps an animal known by him to be of
vicious tendencies and dangerous to people is liable to a person
injured by such animal, unless the injured party is guilty of
negligence contributing directly to the injury. The injured
party is guilty of such negligence if:

"(1) He has done something a reasonabe person should
have known was likely to provoke an attack by the animal; or

"(2) He knew of an unusual characteristic of the animal
and did something which a reasonable person could reason-
ably expect to provoke an attack by that particular animal; or

"(3) He intentionally and unreasonably exposed himself
to injury, either knowing the customary nature of that kind
of animal or knowing the particular nature of the specific
animal."

That instruction would make the owner of the bull an insurer

unless one of the three exceptions as to contributory negligence applied. The instruction was not applicable in any event.

Finding no error, the judgment is affirmed.

MR. JUSTICES HASWELL and JOHN C. HARRISON and the HONORABLE M. JAMES SORTE, District Judge, sitting for Chief Justice JAMES T. HARRISON, concur.

M. JAMES SORTE, District Judge (specially concurring).

I concur in the result. However, it seems to me that defendant Golden State Rodeo Co. was the only defendant that knew of the particular dangerous propensities of the bull "Yellow Fever". If this question had been presented to the jury there might have been a different result.

MR. JUSTICE DALY (dissenting) :

I dissent.

The majority opinion seems to conclude that the dismissal of the Fair Board and Lewis and Clark County, leaving the Golden State Rodeo Co. alone as defendant, excluded all of the defendants who owed a duty to the patrons at the rodeo because it is claimed the rodeo company had no control over the spectators. I disagree. If the rodeo company's duty was arrived at in this manner, it could exhibit its "bull" without any fence.

I find no authority to support the doctrine that the manner in which the known vicious bull approached the fence enclosure, through it or over it, could characterize him legally as a "fractious" bull. I feel the owners and exhibitors of this kind of animal have a duty and are held to a higher degree of care than set forth in the majority opinion, regardless of the duty or negligence of any other parties.